# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ANTOINE LEROI ROYSTER,**

        **Petitioner,**

**v.**                                          **Civil Action No. 3:14cv39**
                                                      **(Judge Groh)**

**TERRY O'BRIEN, Warden,**

        **Respondent.**

## REPORT AND RECOMMENDATION

### I. Background

On April 14, 2014, the *pro se* petitioner, Antoine Leroi Royster ("Royster"), an inmate at USP Hazelton in Bruceton Mills, West Virginia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241. Pursuant to a Notice of Deficient Pleading, the Clerk of Court directed Royster to either pay the $5.00 filing fee or file an application to proceed *in forma pauperis* ("IFP") along with a copy of his Prisoner Trust Account Report ("PTAR") and its Ledger Sheets within twenty-one days. On April 28, 2014, Royster filed the required documents. By Order entered on April 29, 2014, Royster was granted permission to proceed IFP but directed to pay the filing fee. On May 27, 2014, he paid the requisite fee.

In his petition, the petitioner challenges decisions of the United States Parole Commission ("USPC"). The undersigned conducted a preliminary review on June 30, 2014, and determined that summary dismissal was not appropriate at that time. Accordingly, a show cause order was entered. On September 10, 2014, the respondent filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Because petitioner was proceeding *pro se,* on September 15, 2014, a <u>Roseboro</u>[1] Notice was issued. Petitioner filed two responses, one on

---

[1] <u>Roseboro v. Garrison</u>, 528 F.2d 309, 310 (4th Cir. 1975).

December 17, 2014, and the next, on December 29, 2014.[2] Both were titled Petitioner's Response and Objection to Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment.

This matter, before the undersigned for review, report, and recommendation pursuant to LR PL P 2, is ripe for review.

## II. Facts

On January 19, 2007, petitioner was sentenced by the Superior Court of the District of Columbia to a 20-month term of imprisonment to be followed by five years of supervised release, for a 2006 charge of possession with intent to distribute cocaine.[3] After serving his sentence, petitioner began his period of supervised release on July 23, 2008.[4]

On October 13, 2010, petitioner, then 32 years old, was arrested by the D.C. Metropolitan Police Department and charged with assault with a deadly weapon on a police officer while armed with a handgun; carrying a pistol without a license; felon in possession of a firearm; possession of an unregistered handgun; possession of unregistered ammunition; and destruction of property.[5] He was arrested the same day.[6] The petitioner was then transferred to the jurisdiction of the USPC pursuant to the National Capital Revitalization and Self-Government

---

[2] Petitioner's second response was merely a re-filing of the same document previously filed on December 17, 2014, but with the addition of multiple attached exhibits.

[3] Dkt.# 19-1 at 3.

[4] Dkt.# 19-1 at 4.

[5] Dkt.# 19-1 at 19.

[6] Id.

Improvement Act of 1997.[7] On November 22, 2010, the USPC issued a warrant, alleging that petitioner had violated the conditions of his supervised release. The USPC directed the U.S. Marshals for the District of Columbia to take petitioner into custody as soon as possible, but if he were already in custody, to lodge the warrant as a detainer instead.[8]

On March 16, 2011, after having pled guilty in Superior Court for the District of Columbia to unlawful possession of a firearm; carrying a pistol without a license; and assault on a police officer, he was sentenced to a 30-month term of incarceration to be followed by 3 years' supervised release.[9]

On March 12, 2012, almost 12 months into petitioner's 30-month sentence, the USPC received a letter from petitioner, requesting that the USPC take action on the detainer so that he could serve his 30-month sentence in Case No. CV2019353 concurrently with whatever term of incarceration the USPC would require him to serve for his supervised release violations, in order to be eligible for early release to a half-way house.[10]

After petitioner finished serving his 30-month sentence, the USPC's warrant based on the supervised release violations was executed on December 18, 2012; petitioner was released that

---

[7] On August 5, 1998, the Commission obtained jurisdiction of D.C. Code offenders to grant and deny parole through the National Capital Revitalization and Self-Government Improvement Act of 1997, Pub. L. No. 105-33, §11231(a)(1), 111 Stat. 712, 745, D.C. Code §24-1231(a)("Revitalization Act."). See also Franklin v. District of Columbia, 163 F.3d 625, 632 (D.C. Cir. 1998). Effective August 5, 2000, the Commission was given the responsibility of supervising parolees and revoking parole. §11231(a)(2) of the Act codified at D.C. Code §24-131(a)(2).

[8] Dkt.# 19-1 at 23 – 24.

[9] Case No. 2010CF2-019353. See Dkt.# 19-1 at 27.

[10] Dkt.# 19-1 at 28.

same day on the supervised release detainer and taken to FCI Beckley.[11] A January 8, 2013 supplement to the warrant reflects petitioner's convictions in Case No. 2010CV2019353.[12]

On January 17, 2013, the USPC sent petitioner a letter advising him that a finding of probable cause had been found, to proceed on a hearing to determine whether his supervised release should be revoked.[13] On February 20, 2013, a UPSC examiner prepared an institutional revocation pre-hearing assessment, noting that probable cause had been found on January 16, 2013, and setting a revocation hearing deadline of March 17, 2013.[14]

On February 26, 2013, the USPC presented petitioner with a proposal for expedited revocation of his supervised release, which, if accepted, would require petitioner to serve a new term of 36 months in prison with no new term of supervised release to follow.[15] On March 6, 2013, petitioner signed the Proposed Decision form, declining the USPC's proposal and requesting an in-person revocation hearing.[16]

On May 7, 2013, a USPC hearing examiner appeared at FCI Beckley to conduct petitioner's institutional revocation hearing. However, petitioner requested a continuance to request counsel be appointed to represent him; he acknowledged his understanding that the next scheduled docket would not be until October 2013.[17] Petitioner's case manager advised the

---

[11] Dkt.# 19-1.

[12] Dkt.# 19-1 at 33 – 34.

[13] Dkt.# 19-1 at 37 – 38.

[14] Dkt.# 19-1 at 42.

[15] Dkt.# 19-1 at 47 – 51.

[16] Dkt.# 19-1 at 52.

[17] Dkt.# 19-1 at 53 – 54.

examiner that prior to the hearing, petitioner had refused to speak with her regarding requesting counsel for the hearing.[18] The USPC granted petitioner's request, continuing the hearing until October.[19]

On October 22, 2013, the USPC held petitioner's institutional revocation hearing at the Philadelphia Federal Detention Center.[20] Petitioner appeared with counsel from the Federal Public Defender and admitted to the violations he was convicted of in Case No. 2010CF2019353.[21] Accordingly, the USPC revoked his supervised release and imposed a new 36-month term of imprisonment, to begin on December 18, 2012, the date the warrant was executed.[22]

### III. Contentions of the Parties

#### A. The Petition

The petitioner argues that

1) he should be released from prison because his 36-month term of imprisonment based on the revocation should have run concurrently, instead of consecutively with the 30-month sentence imposed by the D.C. Superior Court on the other violations of D.C. law.[23]

2) The USPC violated his due process rights by waiting to execute its warrant and not revoking his parole until after he completed the 30-month DC Superior Court sentence.

---

[18] Id.

[19] Id.

[20] Dkt.# 19-1 at 55 – 56.

[21] Dkt.# 19-1 at 55 – 56.

[22] Dkt.# 19-1 at 57.

[23] Petitioner was convicted of assault on a police officer; unlawful possession of a firearm; and carrying a pistol without a license outside of home/business. Judgment was entered on March 11, 2011. Dkt.# 1 at 11.

5

3) Despite the USPC's knowledge of his whereabouts, as early as November 22, 2010, he was never timely provided with an initial revocation hearing, in violation of the USPC's own statutes and protocol, and in violation of petitioner's due process rights; and

4) after petitioner refused to agree to the March 6, 2013 expedited revocation procedure, the USPC failed to provide him a hearing with counsel.

As relief, he requests that the Court conduct "an affirmative defense examination under Fed. Civ. Rule 8(c)[;]" vacate the sentence imposed; and "remand . . . [him] for immediate release," so that he can serve his supervised release immediately.[24]

**B. Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment**

The respondent moves to dismiss the petition or for an Order granting summary judgment, arguing that

1) petitioner is not entitled to relief because he failed to exhaust his administrative remedies;
2) the USPC acted within its discretion by executing the warrant and providing the petitioner with a revocation hearing after he completed his 30-month sentence and not sooner.

**C. Petitioner's Responses**

Petitioner reiterates his arguments and attempts to refute the respondent's on the same.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

---
[24] Dkt.# 1 at 9.

plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a

sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Analysis

**Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to any federal law, must first exhaust all available administrative remedies. 42 U.S.C. §1997(e)(a). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes," Porter v. Nussle, 534 U.S. 516, 524 (2002), and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter v. Nussle, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at 92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional

level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Hazelton or FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

To the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under §2241 are merely judicially imposed. See, e.g., Martinez v. Roberts, 804 F.2d 570 (9th Cir. 1996) (federal inmates are required to exhaust their administrative remedies prior to filing a §2241 petition); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3rd Cir. 1996) (same); McCallister v. Haynes, 2004 WL 3189469 (N.D. W.Va. 2004) (same). Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See LaRue v. Adams, 2006 WL 1674487 *8 (S.D.W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) cert. denied, 521 U.S. 1131 (1997)). Indeed, a number of courts have found that the exhaustion requirement may be waived where the administrative process would be futile. See id. at *5-*7.

However, even in cases where the administrative process is unlikely to grant an inmate relief, Courts have enforced a longstanding policy favoring exhaustion. See Alexander v. Hawk, 159 F.3d 1321, 1327-28 (11th Cir. 1998). In particular, it has been noted that the following policies are promoted by requiring the exhaustion of administrative remedies: "(1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary

factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources . . . (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that 'frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures.'" Id. at 1327 (citation omitted).

In this case, the gravamen of petitioner's claims is his allegation that the BOP failed to run the 36-month revocation sentence concurrently with the 30-month DC Superior Court sentence. As such, petitioner's claims amount to a dispute over sentencing calculation. Petitioner clearly has not exhausted his administrative remedies. While he argues otherwise, pointing to his March 12, 2012 letter to the USPC as purported proof, that letter does not even begin to suffice to prove exhaustion. Exhaustion of administrative remedies would be particularly appropriate here, given that the BOP is charged with the responsibility of sentence computation and has expertise in this area. See United States v. Wilson, 503 U.S. 329, 112 S.Ct. 1351 (1992)(the Attorney General, through the BOP, has the responsibility for administering federal sentences); United States v. Lucas, 898 F.2d 1554 (11th Cir. 1990) (the power to grant jail time credit lies exclusively with the Attorney General). By requiring the petitioner to attempt resolution of his claim within the Bureau's administrative remedy process, the Court would be promoting many of the policies which underlie the exhaustion principle. For example, the administrative remedy process could develop the necessary factual background upon which the petitioner's claim is based, allow the BOP the opportunity to exercise its discretion and apply its expertise in this area, conserve scarce judicial resources, give the BOP a chance to discover and correct its own possible error, and avoid the deliberate flouting of the administrative process.

Accordingly, because it is apparent from the record that petitioner has deliberately flouted the administrative process, the undersigned recommends that his claims be dismissed without prejudice,[25] to permit him to exhaust his administrative remedies before re-filing, should he still be dissatisfied with the BOP's response to the administrative remedy process.

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt.#18) be **GRANTED,** and petitioner's §2241 petition (Dkt.# 1) be **DENIED** and **DISMISSED with prejudice.**

---

[25] Petitioner's claims are due to be dismissed in any case, because they are without merit. Despite argument to the contrary, the respondent fully complied with 28 CFR §2:213, which states in pertinent part:

§2.213 Warrant placed as detainer and dispositional review.

**(a)** When a releasee is a prisoner in the custody of other law enforcement authorities, or is serving a new sentence of imprisonment imposed for a crime (or for a violation of some other form of community supervision) committed while on supervised release, a violation warrant may be lodged against him as a detainer.

**(b)** The Commission shall review the detainer upon the request of the prisoner pursuant to the procedure set forth in §2.47(a)(2). Following such review, the Commission may:

**(1)** Withdraw the detainer and order reinstatement of the prisoner to supervision upon release from custody;

**(2)** Order a dispositional revocation hearing to be conducted at the institution in which the prisoner is confined; or

**(3)** *Let the detainer stand until the new sentence is completed. Following the execution of the Commission's warrant, and the transfer of the prisoner to an appropriate federal facility, an institutional revocation hearing shall be conducted.*

28 CFR §2:213. (emphasis added).

Accordingly, the USPC was well within its rights to wait until petitioner had completed serving his 30-month DC Superior Court sentence before executing the warrant and providing petitioner with his revocation hearing. It had no constitutional obligation or statutory duty to conduct a revocation hearing for petitioner before he completed his D.C. sentence. See Moody v. Daggett, 429 U.S. 78, 87 (1976)(upholding USPC's decision to delay parole revocation hearing until completion of the new sentence even if the delay results in the violator serving his revocation term consecutively to the new sentence); Walker v. Henderson, 912 F. Supp. 1, 3 (D.D.C. 1996)(federal parolee serving new D.C. life sentence not entitled to revocation hearing until Commission's warrant is executed).

**Within fourteen (14) days** after being served with a copy of this Recommendation, **or by March 31, 2015,** any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Report and Recommendation to all counsel of record via electronic means.

DATED: March 17, 2015

                                                      /s/ James E. Seibert  
                                                    JAMES E. SEIBERT  
                                                    UNITED STATES MAGISTRATE JUDGE